UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
CYNTHIA CUMMINGS, CAROLYN COX, CHERYL :
WATKINS, GINA RUSCH, ANDRE LAKE, CYNTHIA :
MCCRIGHT, and KIMBERLY BERRY, as Trustees of :
DISTRICT COUNCIL 1707, LOCAL 95 HEAD START :
EMPLOYEES WELFARE FUND, :
:
                    Plaintiffs, :
:
  -against- :
:
WEST HARLEM COMMUNITY ORGANIZATION, :
INC., :
:
                    Defendant. :
-------------------------------------------------------------------x
GOLD, STEVEN M., U.S. Magistrate Judge:

REPORT &
RECOMMENDATION
17-CV-4236 (RJD) (SMG)

7/13/18
Adopted without objection or qualification. Clerk shall enter judgment accordingly.
s/ Raymond J Dearie

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ JUL 17 2018 ★
BROOKLYN OFFICE

## INTRODUCTION

Plaintiffs Cynthia Cummings, Carolyn Cox, Cheryl Watkins, Gina Rusch, Andre Lake, Cynthia McCright, and Kimberly Berry, as Trustees of District Council 1707, Local 95 Head Start Employees Welfare Fund (collectively, the "Fund"), bring this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 141 *et seq.* Upon plaintiffs' application and in light of defendant's failure to appear or otherwise defend this action, the Clerk of the Court entered the default of defendant on September 11, 2017. Docket Entry 10. Plaintiffs moved for entry of default judgment against defendant on September 22, 2017. Docket Entry 11. United States District Judge Raymond J. Dearie then referred plaintiffs' motion to me for Report and Recommendation. Order dated September 26, 2017. In response to this Court's order, plaintiffs submitted additional information in support of their motion on March 22, 2018. Docket Entry 17.

Plaintiffs seek monies allegedly owed by defendant West Harlem Community Organization, Inc. ("West Harlem Community") to the Fund pursuant to ERISA and the terms of a Collective Bargaining Agreement ("CBA"), as well as under a Trust Agreement entered into by District Council 1707, Local 95 ("Union") and Head Start Sponsoring Board of the City of New York ("HSSBC"). The CBA, submitted as Exhibit B to the Affidavit of James W. Versocki in Support of Default Judgment ("Versocki Aff."), Docket Entry 11-3, is between the Union and the HSSBC. CBA; Affidavit of Randy Paul in Support of Default Judgment ("Paul Aff.") ¶ 6, Docket Entry 17. Pursuant to a recognition clause within the CBA, HSSBC is the bargaining representative for employers covered by the agreement. CBA Art. I. Defendant has been an employer as defined under the CBA and Trust Agreement and has contributed to the Fund for its represented employees since at least 1994. CBA Art. I, § 1; Versocki Aff. Ex. C, Trust Agreement, Art. 3.3, Docket Entry 11-4; Paul Aff. ¶ 11.

The Fund was established under the Trust Agreement to collect and receive required benefit contributions and to provide health care benefits to eligible employees under the terms of the CBA. Complaint ("Compl.") ¶ 6, Docket Entry 1; Versocki Aff. Ex. C, Trust Agreement, Art. 2.2. Defendant West Harlem Community has made, and continues to make, payments to the Fund to provide health care coverage to its employees and has never disputed its obligation to make such contributions to the Fund under the terms of the CBA. Paul Aff. ¶ 19. Plaintiffs contend, however, that defendant failed to make certain required payments to the Fund, and they seek unpaid fringe benefit contributions for various months ranging between July 2015 and December 2016, interest on those contributions, liquidated damages, litigation expenses, and attorneys' fees. Versocki Aff. at 5, Docket Entry 11-1; Versocki Aff. Ex. D, Fund's Statement of Liability, Docket Entry 11-5.

Having reviewed plaintiffs' submissions and for the reasons that follow, I respectfully recommend that the Fund be awarded $37,997.87 in unpaid contributions, $8,330.04 in interest on the unpaid contributions plus per diem interest to be calculated at a daily interest rate of $10.22 for the period from September 23, 2017 until final judgment is entered, $7,599.57 in liquidated damages, and $2,642.50 in attorneys' fees and costs.

## DISCUSSION

*A. Legal Standards*

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment. *See Shariff v. Beach 90th Street Realty Corp.*, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, once a default has been entered against a defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the court may, on a plaintiff's motion, enter a default judgment against that defendant. Fed. R. Civ. P. 55(b)(2).

A defendant who fails to answer or defend is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Morales v. B&M Gen. Renovation Inc.*, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted by*, 2016 WL 1258482 (E.D.N.Y. Mar. 29, 2016). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (citation and quotation marks omitted); *see also Au Bon Pain Corp. v. Artect,*

3

*Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). A court therefore retains the discretion to determine whether a final default judgment is appropriate. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). Even after a defendant has defaulted, "[a] plaintiff must . . . establish that on the law it is entitled to the relief it seeks, given the facts as established by the default." *U.S. v. Ponte*, 246 F. Supp. 2d 74, 76 (D. Me. 2003) (citation omitted). *See also Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (recognizing the court's authority, even after default, to determine whether plaintiff has stated a cause of action).

*B. Liability*

As noted, plaintiffs assert claims under the LMRA and ERISA. For the reasons that follow, plaintiffs' complaint asserts valid claims against West Harlem Community for both LMRA and ERISA violations.

1. Section 301 of the LMRA

Section 301 of the LMRA provides for federal jurisdiction over "[s]uits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). Plaintiffs allege that "[West Harlem Community] is an 'employer' within the meaning of the National Labor Relations Act." Compl. ¶ 8. Plaintiffs also allege that West Harlem Community, at all times relevant to this action, has been a party to or otherwise bound by the terms and conditions of the CBA between the Union and HSSBC. Compl. ¶ 11; Versocki Aff. ¶ 10, Paul Aff. ¶ 11. Defendant is also bound by the Trust Agreement. Compl. ¶ 13. The CBA required defendant to pay employee welfare benefit contributions and wage deductions to the Fund, "in agreed amounts and specified percentages of the cost of health care premiums for employees covered by the [CBA]." Versocki Aff. ¶ 10; Compl. ¶ 12; CBA, Art. XII, Sec. 2(c).

4

Plaintiffs allege that defendant failed to remit the contributions required under the CBA. Compl. ¶ 14; Statement of Liability, Versocki Aff. Ex. D. Plaintiffs' allegation that West Harlem Community failed to provide the requisite fringe benefit contributions during various months between July 2015 and December 2016 establishes a violation of Section 301 because it demonstrates that West Harlem Community failed to comply with the terms of the CBA and the Trust Agreement. *See Bricklayers Ins. and Welfare Fund v. Everest Masonry Const. et al.*, 2017 WL 4179853, at *2 (E.D.N.Y. June 26, 2017) (finding that the defendant-employer's failure to remit contributions required by the applicable CBA constituted a violation of Section 301 of the LMRA), *report and recommendation adopted by*, 2017 WL 4217116 (E.D.N.Y. Sept. 20, 2017); *Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs, Local 15, 15A, 15C& 15D, AFL-CIO v. A.G. Constr. Corp.*, 2014 WL 354647, at *3 (E.D.N.Y. Jan. 31, 2014) (same); *Gesualdi v. D & E Top Soil & Trucking Inc.*, 2013 WL 1729269, at *3 (E.D.N.Y. Mar. 26, 2013) (same), *report and recommendation adopted by*, 2013 WL 1728893 (E.D.N.Y. Apr. 22, 2013).

2. Section 515 of ERISA

Plaintiffs have also established the elements of liability required to state a claim pursuant to Section 515 of ERISA, which provides that:

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or agreement.

29 U.S.C. § 1145.

Plaintiffs rely on the same allegations and evidence discussed above to support their ERISA claim. Plaintiffs contend that West Harlem Community meets the ERISA definition of an employer by acting "directly as an employer and/or indirectly in the interests of an employer

5

in relation to the Fund." 29 U.S.C. § 1002(5); Compl. ¶¶ 8-9. Plaintiffs also contend that they are fiduciaries of a multiemployer employee benefit welfare plan as defined under ERISA. 29 U.S.C. §§ 1002(1)-(2), 1002(21), 1002(37); Compl. ¶¶ 4-5. Accepting plaintiffs' well-pleaded allegations as true, I conclude that West Harlem Community's failure to remit fringe benefit contributions between July 2015 and December 2016, as was required by the CBA and Trust Agreement, violated Section 515 of ERISA. *See Bricklayers Ins.*, 2017 WL 4179853, at *3 (finding liability under Section 515 where the defendant-employer failed to remit contributions as required by a CBA); *A.G. Constr.*, 2014 WL 354647, at *3 (same); *Trustees of Local 7 Tile Indus. Welfare Fund v. Star Constr. Marble & Granite, Inc.*, 2014 WL 173420, at *2 (E.D.N.Y. Jan. 13, 2014) (same).

*C. Damages*

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of default, allegations relating to damages are not. *See Greyhound Exhibitgroup*, 973 F.2d at 158. Rather, claims for damages generally must be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed. *Id.* A court must ensure that there is a basis for the damages sought by a plaintiff before entering judgment in the amount demanded. *See Fustok v. ContiCommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence. *See* Fed. R. Civ. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991); *Fustok*, 873 F.2d at 40.

Plaintiffs have submitted their calculation of damages with supporting documentation and defendant has not submitted any opposition. I therefore conclude that a hearing on the issue of damages is not warranted.

6

As noted above, plaintiffs seek unpaid contributions, interest on those contributions, liquidated damages, costs, and attorneys' fees. The damages recoverable for violating Section 1145 by failing to pay contributions in a timely manner are enumerated in Section 1132(g)(2), which provides that the court shall award the plan:

(A)  the unpaid contributions,
(B)  interest on the unpaid contributions
(C)  an amount equal to the greater of –
  (i)  interest on the unpaid contributions, or
  (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A),
(D)  reasonable attorney's fees and costs of the action, to be paid by the defendant, and
(E)  such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). The Trust Agreement provides for the same relief. Trust Agreement, Art. 4.4.

1. Unpaid Contributions

In their Complaint, plaintiffs sought unpaid contributions totaling $37,838.89, but in their filings related to the present motion, plaintiffs seek $37,997.87 in unpaid contributions. *Compare* Compl. Wherefore Clause, *with* Statement of Liabilities; Statement of Damages ¶ II; Paul Aff. ¶ 16. Among the documents plaintiffs have submitted in support of their pending motion is a statement of liabilities that lists the months when defendant failed to remit payments as well as the outstanding balances due for those months, which total $37,997.87.[1] Plaintiffs have also submitted monthly billings to defendant for the relevant periods. Monthly Invoices, Paul Aff. Ex. B. The Monthly Invoices include the number of covered employees, the type of coverage elected by each individual, any supplemental benefits selected by the covered

---

[1] *See* Statement of Liabilities. The statement shows outstanding payments from a non-consecutive range of months: July 2015, August 2015, September 2015, October 2015, November 2015, March 2016, April 2016, June 2016, July 2016, and December 2016. Statement of Liabilities.

7

employees, and the cost of the coverage, plus a per-employee administrative charge. Paul Aff. ¶ 15. The Monthly Invoices are in amounts slightly greater than those listed in the Statement of Liabilities because the invoices include late charges that accrued during the period between when plaintiffs filed their Statement of Liabilities and when plaintiffs submitted the invoices.[2] Those regularly-accruing late charges also fully account for the difference between the amount sought in plaintiffs' complaint and the amount plaintiffs seek in their pending motion. *See* Paul Aff, Ex. B, Docket Entry 17-2.

Fed. R. Civ. P. 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Accordingly, the Court will ordinarily not award a plaintiff a default judgment in an amount greater than sought in the complaint. *See Zhen Ming Chen v. New Fresco Tortillas Taco LLC*, 2015 WL 5710320, at *8 (S.D.N.Y. Sept. 25, 2015), *report and recommendation adopted* 2017 WL 818469 (S.D.N.Y. Mar. 1, 2017) ("The Court cannot award plaintiff more than he sought . . . ."). At the same time, Rule 54(c) "does not preclude an award of damages that accrued during the pendency of the action," where "such damages were explicitly requested in the complaint, and sufficiently established by the affidavits submitted by plaintiffs." *See Ames v. STAT Fire Suppression, Inc.* 227 F.R.D. 361, 362 (E.D.N.Y. 2005). I therefore respectfully recommend that plaintiffs be awarded $37,997.87 for unpaid contributions beginning in July 2015 and consisting in part of late charges which continued to accrue while this action has been pending.

2. Interest

Plaintiffs also seek interest on the unpaid contributions under ERISA, 29 U.S.C. § 1132(g)(2)(B). The Trust Agreement likewise provides for interest on all unpaid contributions.

---

[2] Plaintiffs submitted their Statement of Liabilities on September 22, 2017 and the invoices on March 22, 2018.

Trust Agreement, Art. 4.4(b). Under the terms of the agreement, the defendant is required to pay interest on the unpaid contributions of one percent (1%) interest per month. *Id.* The agreement is silent on whether interest should be compound or simple, but plaintiff's calculations treat the interest as simple. *See* Statement of Damages ¶ IV.

Plaintiffs calculate the total amount of interest due, as of September 23, 2017, to be $8,330.04. Interest continues to accrue from September 23, 2017 to the date of entry of judgment, at a rate plaintiffs calculate to be $10.22 per day. The Court's independent calculation of interest due yields a slightly higher sum and per diem rate, which confirms that plaintiffs are entitled to the sums they now seek. *See Bricklayers Ins.*, 2017 WL 4179853, at *4 n.6 (limiting damages awarded in a default judgment to the amounts then sought, despite documentary evidence that suggested plaintiffs might be entitled to more). Accordingly, I respectfully recommend that plaintiffs be awarded accrued interest through the date on which they filed the instant motion, totaling $8,330.04. I further recommend that plaintiffs be awarded interest, at the daily rate they propose, from September 23, 2017 to the date judgment is entered.

3. Liquidated Damages

Plaintiffs also seek $7,599.57 in liquidated damages. Statement of Damages. Plaintiffs are entitled to "an amount equal to the greater of-- (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent." 29 U.S.C. § 1132(g)(2). The Trust Agreement mirrors this language, but explicitly sets the amount of liquidated damages at 20%. Trust Agreement, Art. 4.4(c). In this case, although the interest on the unpaid contributions exceeds 20% of the unpaid of the unpaid contributions, plaintiffs seek liquidated damages of only 20% of the unpaid contributions, or $7,599.57. Versocki Aff. ¶ 14. Accordingly, I respectfully recommend that plaintiffs be awarded $7,599.57 in liquidated

9

damages.

### 4. Attorneys' Fees and Costs

Plaintiffs seek recovery of $2,852.50 in attorneys' fees and costs incurred during the prosecution of this case. Compl., Wherefore Clause; Versocki Aff. ¶¶ 15-17. Upon a finding that defendant has been delinquent in paying contributions, an award of attorneys' fees under Section 1132(g)(2)(D) is mandatory. *See Iron Workers Dist. Council of W. N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1506 (2d Cir. 1995). Counsel has submitted contemporaneous time records in compliance with *New York State Association for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). Attorneys' Fees and Expenses, Docket Entry 11-7. Plaintiffs seek reimbursement for $2,852.50 in legal fees and disbursements through September 21, 2017. Versocki Aff. ¶ 17. This total is based upon 4.25 hours at an hourly rate of $350.00 for the work of attorney James Versocki, seven hours at an hourly rate of $125.00 for the work of paralegal Amanda Macaluso,[3] and filing fees and service costs of $490.00.

In this Circuit, courts awarding attorneys' fees calculate a "presumptively reasonable fee" by taking the product of the hours reasonably expended and a reasonable hourly rate that reflects "what a reasonable, paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183-84 (2d Cir. 2008). To determine whether an hourly rate is reasonable for a particular case, courts "should rely on reasonable hourly rates approved by other courts in the District and [their] own familiarity with the

---

[3] Plaintiff attorney's affidavit in support of default judgment asserts that paralegal Amanda Macaluso expended 9.05 hours on this case. Versocki Aff. ¶ 16. The contemporaneous time records indicate that Ms. Macaluso expended only seven hours on this case. Attorneys' Fees and Expenses. Because compliance with *Carey* is determined on the basis of the records themselves, not on attorneys' characterizations of time expended, I accept the figure reflected in the time records rather than in Versocki's Affidavit. *See Carey*, 711 F.2d at 1148 ("[A]ny attorney . . . who applies for court-ordered compensation in this Circuit for work done after the date of this opinion must document the application with contemporaneous time records").

prevailing rates in its District." *Trs. of the Local 813 I.B.T. Ins. Trust Fund v. Sprint Recycling, Inc.*, 2010 WL 3613839, at *4 (E.D.N.Y. Aug. 6, 2010), *report and recommendation adopted by*, 2010 WL 3613834 (E.D.N.Y. Sept. 15, 2010).

The number of hours spent by counsel Versocki and paralegal Macaluso are plainly reasonable. Accordingly, I turn to the hourly rates sought.

With regards to attorney James Versocki, plaintiffs seek an award based on a rate of $350 per hour. Versocki Aff. ¶ 16. Eastern District cases awarding attorneys' fees have concluded that the "prevailing rates for experienced attorneys [in this District] range from approximately $300-400 per hour." *Konits v. Karahalis*, 409 F. App'x 418, 422 (2d Cir. 2011) (citation omitted); *see also D'Annunzio v. Ayken, Inc.*, 2015 WL 5308094, at *4 (E.D.N.Y. Sept. 10, 2015) ("Courts in the Eastern District of New York award hourly rates ranging from $200 to $450 per hour for partners" and "$100 to $300 per hour for associates."); *Sass v. MTA Bus Co.*, 6 F. Supp. 3d 238, 261 (E.D.N.Y. 2014) ("Recent opinions issued by courts within the Eastern District of New York have found reasonable hourly rates to be approximately $300-$450 for partners, $200-$325 for senior associates, and $100-$200 for junior associates."). Fees that are considered reasonable for attorneys representing benefit plans are substantially in line with the average rates approved in this District. *See Ferrara v. Reliable Indus. II, Inc.*, 2012 WL 6851088, at *6 (E.D.N.Y. Sept. 27, 2012) (noting that attorneys' rates in ERISA cases in the Eastern District "have ranged between $275-$390 for partners" and collecting cases), *report and recommendation adopted by*, 2013 WL 146085 (E.D.N.Y. Jan. 14, 2013); *see also Gesauldi v. Dan Yant, Inc.*, 6 F. Supp. 3d 264, 273-74 (E.D.N.Y. 2014) (finding $275 a reasonable hourly rate for an attorney who had represented employee benefit plans since 1992). I therefore find the hourly rate for attorney time used in plaintiffs' calculation of attorneys' fees to be reasonable.

Plaintiffs also base their award calculation on a rate of $125 per hour for the work of paralegal Amanda Macaluso. Versocki Aff. ¶ 16. "Recently, reasonable hourly rates in this district have ranged from . . . $70-$100 for paralegals." *Ferrara v. Prof'l Payers Corp.*, 2013 WL 1212816, at *5 (E.D.N.Y. Mar. 23, 2013) (utilizing a rate of $80 per hour for paralegal work based on a survey of other cases); *see also Trustees of the Mosaic and Terrazzo Welfare, Pension, Annuity and Vacation Funds et al. v. High Performance Floors, Inc.*, 2018 WL 334439, at *8 (E.D.N.Y. Jan. 8, 2018) (decreasing requested $100 per hour rate for the work of legal assistants to $90 per hour rate); *Douyon v. NY Med. Health Care, P.C.*, 49 F. Supp. 3d 328, 348-49 (E.D.N.Y. Sept. 30, 2014) (decreasing requested $115 per hour rate for paralegal work to $95 per hour rate); *Gomez v. El Rancho de Andres Carne de Tres Inc.*, 2014 WL 1310296, at *12 (E.D.N.Y. Mar. 11, 2014), *report and recommendation adopted by*, 2014 WL 1310299 (E.D.N.Y. Mar. 31, 2014) (finding the rate of $100 per hour to be slightly higher than is typically awarded for paralegal work, especially where plaintiff provides no information regarding the training and background of the assistant); *Guzman v. Joesons Auto Parts*, 2013 WL 2898154, at *5 (E.D.N.Y. June 13, 2013) ("For paralegals, the presumptively reasonable hourly billing rate is $75.00"). In light of this precedent, I respectfully recommend that the hourly billing rate of $125 for the work of Amanda Macaluso be reduced from $125 to $95 per hour. *Douyon*, 49 F. Supp. 3d at 349. At this hourly rate, the total fees due for the work of Ms. Macaluso are $665. Adding this to the reasonable fees for the work of attorney James Versocki and the $490 reasonably sought for the costs of filing and service, I respectfully recommend that plaintiffs be awarded $2,642.50 in attorneys' fees and costs.

5. Post-Judgment Interest

Federal law provides that post-judgment interest "shall be allowed on any money

judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Post-judgment interest is computed from the date of entry of judgment and is "equal to the weekly average 1 year constant maturity Treasury yield . . . for the calendar week preceding the date of the judgment." *Id.* Post-judgment interest awards are mandatory. *See, e.g., Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008). As noted above, I recommend that plaintiff be awarded compensatory and liquidated damages, pre-judgment interest, as well as attorneys' fees and costs. I therefore respectfully recommend that plaintiff be awarded post-judgment interest on that sum of those awards, at the statutorily prescribed rate, from the date judgment is entered until the date the judgment is paid.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that plaintiffs be awarded: $37,997.87 in unpaid contributions, $8,330.04 in interest on the unpaid contributions plus per diem interest to be calculated at a daily interest rate of $10.22 for the period stretching from September 23, 2017 until final judgment is entered, $7,599.57 in liquidated damages, and $2,642.50 in attorneys' fees and costs. In addition, I respectfully recommend that plaintiffs be awarded post-judgment interest at the federally prescribed rate on the total amount of the judgment from the date that judgment is entered until it is paid.

Any objections to the recommendations made in this Report must be made within fourteen days after filing of this Report and Recommendation and, in any event, on or before June 20, 2018. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order. *See Small v. Sec'y of Health*

13

*and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (discussing waiver under the former ten-day limit). Plaintiffs shall serve this Report and Recommendation on the defaulting defendant at its last known address and file proof of service with the Court.

SO ORDERED.

/s/
Steven M. Gold
United States Magistrate Judge

Brooklyn, New York
June 6, 2018

*U:\#DJM 2017-2018\17-CV-4236 R & R FINAL.docx*